FILED BY ⎵ D.C.

05 JUL 19 PM 5:17

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02-20356-BV |
| | ) | |
| WILLIAM HOLLAND, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER RECONSIDERING AEGIS SCIENCE CORPORATION'S MOTION TO QUASH SUBPOENA

Before the court is William Holland's Notice of Appeal from this court's order of December 15, 2004, granting Aegis Sciences Corporation's motion to quash a subpoena. Holland's appeal has been referred to the United States Magistrate Judge for reconsideration of Aegis' original motion. For the following reasons, the appeal is denied and the court reaffirms its order granting Aegis' motion to quash.

### BACKGROUND

On September 14, 2004 the undersigned magistrate judge issued an order granting the defendant's motion to issue a subpoena duces tecum to Dr. David Black of Aegis Sciences Corporation. On October 4, 2004, the defendant, William Holland, caused a subpoena to be served on Aegis. Aegis promptly filed a motion on October 5, 2004, to quash the subpoena. The court granted the motion to quash on

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 7-20-05

353

December 15, 2004. Holland filed a notice of appeal on December 20, 2004.

As the basis for originally granting Aegis' motion to quash, the court determined that Aegis had already provided Holland with information sufficient to satisfy the subpoena in the form of a "litigation support package." In Holland's notice of appeal from the court's ruling, he contends that the court's determination that the litigation support package contained operating procedures was in error. Holland's appeal and the court's reconsideration of the Aegis' motion to quash is thus limited to Holland's request for the operating procedures used by Aegis at the time of testing of the samples at issue in this case.

In reaching the conclusion that operating procedures were provided in the litigation support package, the court relied on Aegis' assertion in its memorandum in support of its motion to quash the subpoena that "[w]hat Defendant has failed to inform the Court is that Aegis has already produced a litigation support package containing more than 280 pages of documents that are potentially relevant, concerning the *procedures* for and testing of the samples at issue in Defendant Holland's case." (Memo. in Support of Mot. to Quash at 4.) Aegis also stated that it had "produced an extensive amount of information concerning test *procedures* . . . ." (*Id.* at 5.) Based on these representations,

2

the court's limited understanding of operating procedures, and the court's review of the 280 pages of information provided, the court granted the motion to quash.

To support his position that the operating procedures are not included in the litigation support package, Holland claimed that Dr. David Black of Aegis "specifically objected to the defendant's request to provide operating procedures" because the procedures were "considered confidential and proprietary." While this is true, Dr. Black also objected to the production of quality assurance and quality control records and performance records and performance testing. There is no dispute that this information was nonetheless included in the litigation support package. Thus, Dr. Black's objection to the production of operating procedures does not rule out the possibility that they were sufficiently disclosed in the litigation support package.

Based on the foregoing, it was not clear to the court what Holland was actually seeking in regard to "operating procedures." The court's confusion arose in part from the fact that Holland failed to identify the documents requested with adequate specificity. The confusion also resulted from Aegis' failure to identify why it would be unreasonable or oppressive to produce a copy of the operating procedures. In fact, the court was unable to determine if an operating procedures manual even existed; nor had

3

the court been able to determine the relevant size of the request. Moreover, while Aegis had objected generally to the multiple requests in Holland's subpoena, Aegis did not specifically address why the operating procedures are confidential or proprietary.

Accordingly, on January 3, 2005, the court ordered Holland to file a memorandum in support of reconsideration that identifies with specificity the documents needed to satisfy his request for the operating procedures and explains with specificity why the information concerning test procedures in the litigation support package is not sufficient. The court also ordered Aegis to file a supplement memorandum in support of its motion to quash which identifies whether an operating procedure manual exists and its length. Furthermore, the court ordered Aegis to explain in detail why the operating procedures should not be disclosed, assuming there are still objections. Upon receiving this information the court stated that a determination would be made as to whether Aegis' motion to quash the subpoena with respect to production of the "operating procedures" should be granted.

After several motions were granted for additional time to respond to the court's order, Holland filed a memorandum in response to the court's order on June 27, 2005. The court's order directed Aegis to file its memorandum within eleven (11) days of service of Holland's memorandum. This memorandum, along with an

4

supplemental affidavit of David L. Black, Ph.D., were received by the court on July 8, 2005.

## ANALYSIS

In Holland's memorandum, he offers the affidavit of Paul Goldstein, Ph.D.[1] as support for the production of the Aegis's Standard Operating Procedure Manual ("SOPM"). After reviewing the litigation support package, Goldstein contends that it would be impossible to confirm whether the laboratory followed proper procedures during the testing of the specimens. Despite offering no support for his contentions, Goldstein alleges that Aegis "violated scientific ethics and acceptable testing procedures after specifically retesting the specimen." (Def.'s Memo., Ex. 1, ¶ 6) Based on these allegations, Goldstein opined that "Aegis has failed to follow and observe the normal and customary laboratory testing procedures which are required by scientists in the same fields of study and testing procedures." (Id.).

In response to the court's order that Holland identify with specificity the documents needed to satisfy his request for operating procedures, Goldstein stated that Aegis should be

---

1. According to Goldstein's curriculum vitae and his affidavit, he has had over twenty years of laboratory testing experience and has testified in state and federal court in the area of forensic toxicology in at least ten cases.

5

required to produce a copy of its SOPM in effect at the time of the testing of the samples in question. According to Goldstein, with the SOPM, he could then confirm whether or not Aegis followed normal or customary testing procedures, utilized proper storage and security of the specimens, and whether Aegis followed its own procedures. Without stating specifically what documents would satisfy Holland's request, Goldstein asserts that a company's SOPM normally includes: 1) Personnel files showing qualifications and certifications of laboratory personnel involved with the testing of the specimans; 2) Quality Control information on all pieces of equipment and measuring devices used in the production of the date in this case; and 3) Chain of Custody forms for the specimens tested.

The court also ordered Holland to "explain[] with specificity why the information concerning test procedures in the litigation support package is not sufficient." Despite the court's order, Holland has failed to specifically indicate how the litigation support package is insufficient. Instead, Holland has provided only the conclusory statements of Dr. Goldstein that the documentation provided by Aegis was insufficient because it does not allow Goldstein or any other person to assess and determine the reliability of the expert opinion the government intends to offer at trial.

6

The court ordered Aegis to identify whether an operating manual exists, its length and to provide further explanation as to why its operating manual should not be disclosed. In response to Holland's memorandum, and in compliance with the court's order, Aegis has indicated that it does in fact have a SOPM. Aegis avers that the SOPM is more than 5000 pages long with an estimated cost of $11.88 million.

Aegis contends that disclosure of its SOPM is not necessary to understand the analytical data and scientific findings regarding the testing of the specimens at issue. Aegis has also asserted that its SOPM does not include employee personnel files, nor does it contain specific quality control data for devices/equipment used. In regard to the chain of custody forms, Aegis insists that the forms are in the litigation support package that has been given to Holland.

Aegis still maintains that its SOPM is confidential and proprietary. Aegis has spent a considerable amount of money in developing its SOPM in order to maintain certification from the United States Department of Health and Human Services Substance Abuse and Mental Health Services. Disclosure of the SOPM to a competitor or a new entrant into the market could result in significant loss to Aegis. Thus, Aegis values and protects its laboratory SOPM as intellectual property and trade secret.

7

Furthermore, employees of Aegis are required to sign confidentiality statements concerning proprietary information contained in the SOPM. (Supplemental Aff. of David L. Black, ¶ 7).

After careful consideration of the supplemental memoranda filed by the parties, the court sees no reason why Aegis should provide Holland with a copy of its SOPM. Despite the court's previous order, neither Holland nor Goldstein have specifically demonstrated how the litigation support package is inadequate. Likewise, there are no opinions in Holland's motion or Goldstein's affidavit regarding the adequacy of the testing procedures reflected in the litigation support package. Furthermore, Goldstein has offered no scientific basis that would suggest that Aegis failed to follow and observe normal and customary laboratory testing procedures. Moreover, the only documents that Holland has identified that would satisfy his requests for operating procedures are not even included in Aegis' SOPM. Accordingly, Holland's appeal is denied and the court reaffirms its order granting Aegis' motion to quash the subpoena.

IT IS SO ORDERED this 19th day of July 2005.

*Diane K. Vescovo*
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 353 in case 2:02-CR-20356 was distributed by fax, mail, or direct printing on July 20, 2005 to the parties listed.

---

Mark T. Smith
SHERRARD & ROE
424 Church St.
Ste. 2000
Nashville, TN 37219

William Holland
18553076
Box 509
Mason, TN 38049

David Charles Henry
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Randall P. Salky
LAW OFFICE OF RANDALL SALKY
P.O. Box 776407
Steamboat Springs, CO 80477

T. Clifton Harviel
LAW OFFICE OF CLIFTON HARVIEL
50 N. Front St.
Ste. 850
Memphis, TN 38103

William L. Harbison
SHERRARD & ROE, PLC
424 Church St.
Ste. 2000
Nashville, TN 37219

Stephen B. Shankman
FEDERAL PUBLIC DEFENDER
200 Jefferson Ave.
Ste. 200
Memphis, TN 38103

L. Daniel Johnson
LAW OFFICE OF L. DANIEL JOHNSON
254 Court Ave.
Ste. 300
Memphis, TN 38103

PDA
FEDERAL PUBLIC DEFENDER
200 Jefferson Ave.
Ste. 200
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT